### JOHN M. LOCKNANE AGT. JOHN W. MARTIN.

*Jurisdiction: Courts: Probate Court.*

1. An act of the territorial legislature entitled "An act to establish a code of civil procedure," approved February 12, 1858, so far as the same confers on the probate courts of the territory jurisdiction at common law, and in chancery, is inconsistent with the organic act and is of no legal validity.

ERROR from the Probate Court of Douglas County.

*By the Court*—WILLIAMS, J.

This case is brought to this court by virtue of a petition in error, at the instance of John M. Locknane, plaintiff in error, praying for a dismissal of the proceedings, on the ground of a want of jurisdiction in the court before which the action was originally commenced, and by which judgment was rendered. The record presents the following state of facts of proceedings in this case:

John W. Martin, the plaintiff below, at the December term of the probate court of Douglas county, in this territory, recovered judgment against John M. Locknane, for the sum of eighty-four dollars and twenty cents. The action was instituted for the recovery of the above sum, on a promissory note drawn by Locknane, made payable to Martin, one day after date, and dated February 29th, 1857, with a credit indorsed thereon for the sum of thirty-four dollars.

On the 11th day of December, 1858, judgment by default, was rendered against Locknane, in favor of the plaintiff Martin, for the amount then due on the note, with interest and costs of suit.

The only question presented for adjudication here is that of the jurisdiction of the probate court, before which this action was instituted and the judgment thereof rendered.

The error assigned is, " That said probate court of Douglas county, in the territory of Kansas, has no jurisdiction in such cases."

Section 27 of the organic act of this territory pro-

vides, "That the judicial power of said territory shall be vested in a supreme court, district courts, probate courts and justices of the peace. The supreme court shall consist of a chief justice and two associate justices, any two of whom shall constitute a quorum, and who shall hold a term at the seat of government of said territory annually, and they shall hold their offices during the period of four years, and until their successors shall be appointed and qualified. The said territory shall be divided into three judicial districts, and a district court shall be held in each of said districts by one of the justices of the supreme court, at such times and places as may be prescribed by law; and the said judges shall, after their appointment, respectively reside in the district which shall be assigned them. The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and justices of the peace shall be as limited by law: *provided*, that justices of the peace shall not have jurisdiction of any matter in controversy, when the title or boundaries of land may be in dispute, or when the debt or sum claimed shall exceed one hundred dollars; and the said supreme and district courts, respectively, shall possess chancery as well as common law jurisdiction. Each district court or the judge thereof shall appoint its clerk, who shall also be the register in chancery, and keep his office at the place where the court may be held. Writs of error, bills of exceptions, and appeals shall be allowed in cases from the final decision of said district courts to the supreme court, under such

regulations as may be prescribed by law; but in no case removed to the supreme court shall trial by jury be allowed in said court. The supreme court, or justices thereof, shall appoint its own clerk, and every clerk hold his office at the pleasure of the court for which he shall have been appointed. Writs of error and appeals from the final decision of said supreme court shall be allowed, and may be taken to the supreme court of the United States, where the value of the property or amount in controversy, to be ascertained by the oath or affirmation of either party or other competent witness, shall exceed one thousand dollars, except only that, *in all cases involving title to slaves*, the said writs of error or appeals shall be allowed and decided by the said supreme court, without regard to the matter, property or title in controversy; and except, also, that a writ of error or appeal shall also be allowed to the supreme court of the United States, from the decision of the said supreme court created by this act, or of the district courts created by this act, or any judge thereof, upon any writ of *habeas corpus*, involving the question of personal freedom : *provided*, that nothing herein contained shall apply to or affect the provisions of ' the act' respecting fugitives from justice, and persons escaping from the service of their masters, 'approved February 12th, 1793,' and the act to amend and supplementary to the aforesaid act, approved September 18th, 1850; and each of said district courts shall have and exercise the same jurisdiction, in all cases arising under the constitution and laws of the

United States, as is vested in the circuit and district courts of the United States. And the said supreme and district courts of the said territory, and the respective judges thereof, shall, and may, grant writs of *habeas corpus* in all cases in which the same are granted by the judges of the United States in the District of Columbia; and the first six days of every term of said courts, or so much thereof as may be necessary, shall be appropriated to the trial of causes arising under the said constitution and laws; and writs of error and appeals, in all cases, shall be made to the supreme court of the said territory, the same as in other cases. The said clerk shall receive the same fees, in all cases, which the clerks of district courts of Utah territory now receive for similar services."

The foregoing is the provision of the organic act of this territory, and of course it is the fundamental law, having the force and effect of a constitution, as to the creation, organization, arrangement and regulation of the judicial power of the territory. By it the executive, legislative and judicial departments in the government of this territory, must be controlled in their several spheres of action. The powers of the several departments of the territorial government being, by virtue of this organic act, created by and derived from the congress of the United States, in accordance with the constitution, must be maintained and exercised in obedience to and compliance with this enactment. It is the positive duty of those intrusted with the administration of the government to observe and

John M. Locknane agt. John W. Martin.

maintain a strict compliance with the provisions of
this law. They have no right to enlarge upon the
powers therein imparted, or change them, so as to
allow or permit one department of the government,
thereby created, to encroach upon the legitimate
province of another; nor can the peculiar arrange-
ment and characteristic of either of those depratments,
as fixed by this law, be altered or in any manner
changed, by adding thereto or transferring the attri-
butes and powers, which properly belong to one, from
it to any other branch or portion of the same depart-
ment; not can the peculiar jurisdictional sphere of
action of any of the branches or divisions of the same
department, as organized by this law, be increased
or diminished so far as the province of its power is
concerned. Each department is required to act with-
in its own limits and sphere of organic power; and
where the powers created for any one of the principal
departments is, by this fundamental law, subdivided,
and, for the purposes of administration, distributed
and appropriated to several tribunals in the same gen-
eral department, the arrangement of distribution so
made must be carefully observed and maintained by
those who act officially in the affairs of the govern-
ment thus created.

There is but one question in this case presented for
adjudication here, which is as to the validity or consti-
tutionality of the enactment of the legislature of the
territory of Kansas, vesting the probate courts with
jurisdiction in common law and chancery cases.

The act of the legislature of the territory of Kan-
5

sas entitled "An act to establish a code of civil procedure," (chapter 11, page 65, Territorial Laws of Kansas, A. D. 1858), without, in generally expressed terms, vesting in the probate courts of the territory general, civil and criminal power of jurisdiction in matters of common law and chancery proceedings, nevertheless, by its provisions, invests those courts with authority to act therein—giving them concurrent jurisdiction with the district courts in the several counties of this territory, in cases at common law and chancery. Has the legislature, acting within its proper province and sphere, the rightful power to do this, under the provisions of the organic law of this territory? Upon the solution of this question by the judgment of this court depends the decision of the issue of this case.

The organic law, in the first place, declares that "the judicial power of this territory shall be *vested* in a supreme court, district courts, probate courts and justices of the peace." Here is the express and general creation and impartation of the judicial power of the territory, by the act of the congress of the United States, in the proper exercise of constitutional authority. In creating and imparting that power of judicial authority, the four branches or departments of the judiciary are distinctly and separately named and set forth. The act then goes on to designate in specific terms the peculiar kind and extent of jurisdiction to be used and exercised by each of these divisions of the judicial power so created and invested separately, prescribing to each its

own distinct and peculiar actionary sphere.  After
providing for the constitution of the supreme court,
its quorum, its terms and the tenure of office of its
judges, etc., it proceeds to prescribe that "the juris-
diction of the several courts herein provided for, both
appellate and original, and that of the probate courts
and of the justices of the peace shall be as limited
by law."  It then further provides that justices of
the peace shall not have jurisdiction of any matter in
controversy, where the title or boundaries of land
may be in dispute, or when the debt or sum claimed
shall exceed one hundred dollars; and the said
supreme and district courts, *respectively*, shall possess
chancery as well as common law jurisdiction."  The
act then further provides, in specific terms, for the
proper organization, regulation and procedure of mat-
ters appertaining to the supreme and district courts
of the territory, without, in any manner, alluding to
the probate courts.  It will be found by applying the
proper legal rules of construction in ascertainment of
the intent of the framers of the organic act, that the
jurisdictional power and the more important princi-
ples of the regulation of the supreme court and jus-
tices of the peace in the exercise thereof, is specifi-
cally set forth and provided for in it.  The peculiar
portion of the judicial power, in the first place, cre-
ated, is set apart and appropriated for each of these
courts distinctly, to be exercised by each in its own
prescribed and proper sphere of action.  The probate
courts, however, are left by this act without any
*specific* allotment or arrangement of their power of

action whatever, except that it is provided that in
common with these other courts, they shall be in
their jurisdiction "as limited by law." These pro-
bate courts are thus left, by the organic law, for the
proper definition of their powers of jurisdiction, to
the common usage, acceptation and practice of law,
as received by, acted on and applied to such tribu-
nals of government, under the name and by the des-
ignation of "probate courts." After a careful exam-
ination of elementary works and books of definition,
we have found none, which, in treating on this subject,
does not attribute to these particular courts the power
of jurisdiction over matters of and relating to the
business and affairs of intestates, the last wills and
testaments of deceased persons, guardians and wards,
and the like. None treat of them as possessing, *ex vi
termini,* common law and chancery jurisdiction. Such
will be found to be the view taken and the definitions
of the jurisdictional powers of these courts, by
Jacobs, Kent and Bowen.

It is true that in territorial and state government,
where, by fundamental law, provision is made author-
izing such an exercise of legislative power, in express
terms or by proper legal construction, the force and
effect of the common law as to construction may be, and,
in some instances, we believe, has been changed; but
without such provision of fundamental authority the
assumption of such power by the legislature is unwar-
ranted and without validity. The organic law of this
territory imparts to this section or division of the
judicial power just such jurisdiction as has been, by

the general and common construction, usage and practice of jurisprudence in governmental establishment and procedure, known and practiced by "probate courts," in contradistinction of the supreme, district and other courts, in their exercise of proper judicial power, and no more. Had congress intended to confer on the "probate courts" any other or greater powers of jurisdiction than those attributed to and universally exercised by them under the commonly received and well-established understanding of their peculiar character, *eo nomine*, it is but reasonable to conclude that it would have been so done, when we find that, by this same organic law, the peculiar description of jurisdiction of the supreme and district courts, and that of justices of the peace, is, *in specifie terms*, particularly set forth  The terms "supreme court" and "district court" have also, from general usage, a technical and common acceptation of definition, well understood by all who are conversant with the organization of the judicial department of government, which, by the proper rule of construction of names and title, would establish and give them their attributes of jurisdiction in the absence of any specific terms prescribing their several powers in the law by which they were created. This, we think, is a just conclusion. If congress, then, on enacting this law, and thereby creating the judicial power of this territory, and prescribing the peculiar sphere of action within which the several branches or divisions of that department of government should operate, has not modified, altered, or, in any manner, changed the character

and attributes of this court by the use of clear and specific terms, or by legitimate construction, can the legislature of this territory, itself the offspring and creature of that same organic law, and thereby required to exercise its powers in subjection and obedience to it, assume and exercise such power ? We think not. The legislature can and may pass laws on all rightful subjects of legislation ; but the legislative power is, by the organic law itself, limited to such "rightful subjects of legislation" as are or may be "*consistent with the constitution of the United States and the provisions of this act.*" It can not be successfully urged that the legislature can originate and require the exercise of a power which is, or would be, "inconsistent with" or in violation of the organic act, which is the constitutional law of the territory. To admit this would be to raise the stream of the fountain above its source, and subversive of all law.

The solution of the question, we think, is on this point, under this view of the case, apparent and of easy solution ; but we find that the organic law, by express provision, gives the jurisdictional power, here claimed for " the probate courts," to the supreme and district courts of the territory in such a manner as to effectually forbid the exercise of it by the former. It expressly provides that "*the said supreme and district courts respectively shall possess chancery as well as common law jurisdiction.*" Here the design of the framers of this law is manifest by every rule of construction, grammatical, logical, and reasonable, and therefore legal. We conclude that

the question is settled.   The act having, in the first place, created the power, and, in general terms, vested it in the four distinct tribunals by name; it then appropriates to each its peculiar sphere for the exercise of its part or portion of those powers.   In doing this, it expressly gives to the supreme court and district courts (and to them only) the power of *jurisdiction in chancery and common law matters*.   We say to them *only*, because in appropriating this branch of jurisdiction neither " the probate courts," or any other than the supreme and district courts are named as recipients of it; and, therefore, necessarily excluded by force of construction, which is quite tantamount to express prohibition.   *Inclusio unius, exclusio alterius,* is here palpably applicable.

It will not be argued by any one, we think, that, as this jurisdiction has been given to the supreme and district courts of the territory, naming them as the recipients thereof, therefore any other courts possessing judicial power of any kind, though not named and specified in this special grant of jurisdiction, have the right to possess and exercise the same power.

Considerable effort has been made to sustain the right to the exercise of chancery and common law jurisdiction by the probate courts, under the act of the legislature, by reference to the following provisions of the organic law : " The jurisdiction of the *several* courts herein provided for, both appellate and original, and that of the probate courts and justices of the peace, shall be as limited by law."

John M. Locknane agt. John W. Martin.

The argument here presented, if approved, would prove too much. If this provision should be so construed as to give to the territorial legislature the right to "limit" the jurisdiction of *the several courts,* provided for in this act, then that right exists and might be exercised in relation to the other courts named, as well as the probate courts. The provision applies to them all equally. This view of the case would vest the legislature with full power to override the provisions of the organic law heretofore cited, and control the whole matter of the jurisdiction of the several courts of the territory, taking from one branch of the judiciary and giving it to another, and otherwise, as might be seen fit. We are of the opinion that the exercise of such a right is entirely "inconsistent with the provisions of the organic law." But this provision treats of the *"several"* branches of the judicial power of the territory, and the jurisdiction of *each,* in its severalty thereof. We think that, fairly construed, it means that the action of each, in its separate sphere of jurisdiction "shall be as limited by law;" this limiting not to be inconsistent with the provisions of the organic act. It certainly never was designed by congress, in framing the organic act, that the legislature should exercise a right so plainly inconsistent with the permanent and express provisions of that act itself. Besides, this organic act is formed and designed to be, and is, the fundamental or constitutional law of the territory, from and through which the various powers of government are derived, as imparted by the general government for the regulation

of the several departments thereof, executive, legislative, and judicial, and their several subdivisions of each. It is the source and rule of power for governmental administration of the territory. It establishes the cardinal points of government by, and in strict accordance with which the several departments are to be controlled in their administration. To permit its provisions to be controlled or altered by vague and doubtful notions of construction by any of the departments which derive their power of existence and action from it, would tend to its abrogation, and doubtless soon effect it.

We are aware that, as this power of jurisdiction has, in pursuance of the act of the legislature, been acted upon by the probate judges in the several counties of the territory, considerable inconvenience will be the consequence of the decision, that the act, by virtue of which they exercised this power, is "*inconsistent*" with, and in violation of the organic law of the territory. This, however to be regretted, can not be, and is not, a valid legal reason why this court should decline to declare and enforce the law as understood by it. This tribunal is, by this same organic law, constituted and required by the highest obligations to perform its duty in its own governmental sphere of action, by construing, expounding and declaring the law faithfully and impartially, leaving the responsibility as to the consequences of decision and judgment to fall and remain wheresoever they may justly. There, perhaps, can be no greater injury done to those composing the body politic than that of

either branch or department of the government assuming power and exercising it in derogation and violation of cardinal law.    Let the fundamental law of our government be encroached upon, and its establishment and organization be interfered with, and confusion, strife and oppression will be the irresistible consequence.

ORDER.—It is the unanimous opinion of this court that the act of the legislature of the territory of Kansas, entitled "An act to establish a code of civil procedure," chapter 11, approved February 12th, 1858, so far as the same confers on the probate courts of this territory the power of jurisdiction of cases at common law and chancery, is "inconsistent" with, and in violation of the organic act of this territory; and, therefore, in so much, of no legal validity.    It is, therefore, ordered and adjudged by this court, that the judgment of the probate court of Douglas county, in this case rendered, be set aside, and of no effect in law, or otherwise; that this suit be dismissed, and that the defendant recover of the plaintiff therein, his costs in this behalf expended.