## HENSHAW v. BOARD OF SUPERVISORS OF BUTTE COUNTY.

THE action of a Board of Supervisors in granting a ferry license cannot be reviewed on *certiorari*, except for excess or want of jurisdiction.

Boards of Supervisors have, under the statute, a *general* power to grant a ferry franchise, and to determine where, under what circumstances, and to whom it shall be granted.

Under the Act of 1855, concerning public ferries and toll bridges, the *owner* of land on either or both sides of a stream has not an unqualified right to a ferry license; nor has the owner of land on one bank any preference over one claiming and in possession of land on the other side. The holder of lands is put on the same footing, as to the ferry privilege, as the owner.

In this case—a contest before a Board of Supervisors between Hale, claiming to be the holder and in possession of land on one bank of a stream, and Henshaw, the owner on the other bank, for a ferry license—the Supreme Court refused to review the action of the Board upon the proofs as to the fact of a previous grant of a license to Hale; that he was holder or possessor on one bank; that a ferry was necessary; and that Henshaw had unreasonably neglected to apply for a license, etc.

APPEAL from the County Court of Butte.

Contest between S. Y. Hale and J. L. Henshaw, as to their respective rights to a license to establish a ferry across the Feather river about a mile below Oroville.

On the third of November, 1856, Hale petitioned the Board of Supervisors of Butte county for a license to establish a ferry at

that point, alleging that the land on both sides of the river was public land.   The application was opposed by parties having ferries in the same vicinity.   Henshaw was a witness for Hale.   On the fifth of November, the Board granted Hale a license to run a ferry at said point for six months.   The Board does not find that any notice was given of the application ; or that there was a highway across the river at said point ; or that it was public land ; or that the public convenience required the establishment of a ferry ; or that Hale was a suitable person.

On the fifth of May, 1857, Hale petitioned the Board to renew his license.   Henshaw, Moore and Ord opposed such renewal, and petitioned the Board to grant a license to them at the same place ; they stated in their petition, among other things, that they were the owners of the land on the west bank of the river, and that the ferry license to Hale was illegally granted.   In April, 1857, the Fernandez grant was located by the United States Surveyor on the west bank of Feather river for several miles above and below that point—prior to such location it was generally considered to be public land.   Moore and Henshaw testified that this survey and location first made them aware that they and Ord owned the ferry landing on the west bank of the river.   The land on the west side covered by said grant was at that time in possession of Hale and others ; suits were then instituted against them, and they were ejected in the fall of 1859, and the actual possession of the land where the ferry was located came to the grant holders.   May 10th, 1857, Henshaw, Moore and Ord's petition and remonstrance were decided by the Board.   In their order of this date, they say " that they leave to other tribunals to decide whether the alleged informalities in obtaining and granting the previous license (Nov. 5th, 1856) are insufficient to give this the character of a new application, and that it has not before it sufficient evidence to show ownership of the land as against the actual possession of petitioner," and ordered a renewal of a license to Hale for one year.

On the seventh of May, 1858, on petition of Hale, his license was renewed for one year.   May, 1859, Hale petitioned for a renewal of the license, and it was renewed for one year from May 5th, 1859.   August, 1859, by decree, in bill for partition between

Henshaw, Moore and Ord, the ferry landing on the west side of the river was awarded to Henshaw.

April 9th, 1860, Hale petitioned for a renewal of his license. Henshaw filed a remonstrance to such renewal, and also filed a petition for a license to establish a ferry at said point. The grounds of Henshaw's opposition were mainly the invalidity of the first license, and each renewal thereof; that the Board did not find any of the facts necessary to give jurisdiction in such a case ; that the three months' notice required by section eighth of the Act concerning ferries and toll bridges was never given, and that there was no highway or public road across the river at said point or on the western side thereof; that the land on the east side of said river is public land ; that Henshaw now and at all times was ready, able and willing to establish a ferry at said point ; and that neither he, nor those from whom he claims, ever granted any right of highway or ferry at said point to any person or persons, and that the land on the west side of the river was owned by him by grant from Mexico in 1846, and by patent from the United States in 1857. Hale filed a remonstrance to Henshaw's petition.    Both petitions and remonstances were heard together as one and as a part of the same proceedings.    Hale, for the purposes of the proceeding, admitted Henshaw's ownership of the land on the west bank of the river where the ferry was, and for some miles up and down the river, under the Mexican grant and patent named.

Hale set up a claim to the land on the east and south side of the river, under the possessory law of this State.    Whether he had complied with the law so as to perfect his right, Henshaw disputed.

At the time Hale located this tract, a public road ran to and along the bank where the eastern terminus of the ferry was.    The road on the east side of the river is a public highway to and including the ferry landing on that side, and public convenience required the establishment of a ferry at that point.    Whether the road on the west side was ever a highway was disputed—Henshaw claiming that no legal steps had ever been taken to make it such.

Henshaw applied by petition, setting out the facts, to the County Judge of Butte, charging that the Board of Supervisors had exceeded its jurisdiction in granting Hale a ferry license and rejecting

his petition, and asked for a writ of review; and that the proceedings of the Board be certified to the County Court; and that Hale and the Board be cited to appear and show cause, if any, why the order granting the license to Hale should not be set aside, and the license be granted to Henshaw. Writ granted. The Board and Hale, after filing a motion to dismiss the writ, which was overruled, answered, denying the jurisdiction of the County Court, on the ground that the acts of the Board in granting ferry licenses are legislative and not judicial, and hence not subject to review.

The cause was submitted to the County Court on the pleadings had in that Court, and the proceedings and settled statement of the evidence as certified to the Court by the Board. The County Judge found that at the time the Board pretended to grant a license to Hale in 1856, it was upon the belief that the land on both sides was public land; that Henshaw thought it was; that Henshaw had no idea that the land on the west side of the river at that point would be covered by the Fernandez grant; that the grant was not located by definitive metes and bounds, nor was it until April, 1857; that as soon as Henshaw, Ord and Moore knew that their grant covered the land at that point, they opposed, in May, 1857, the renewal of the license to Hale, and petitioned to have the license granted to them; that Henshaw at all times since he knew that he owned the land on that side was ready and willing to establish a ferry there; that the road on the west side is not a public road; that the right of way has never been granted, or acquired by dedication or otherwise; that at the time Hale pretended to locate the tract of land, the road on the east side of said river leading to the ferry landing was a highway, and was not liable to be located under the Possessory Act; that Hale never complied with the act, and that the three months' notice required by the eighth section of the Ferry Act was never given in 1856, or at any time; that there was a public necessity for the establishment of a ferry; that the granting of the license originally and subsequent renewal thereof were illegal, as against Henshaw, and that Henshaw did not omit or neglect to apply for the establishment of a ferry at said point within a reasonable time; that when Henshaw, Moore and Ord, in May, 1857, applied for a license, no partition of the Fernandez

11

grant had then been made, but that steps were soon after taken to that effect, which resulted in such a decision as to give to Henshaw the land and landing at the ferry in question, on the west side of the river; that as soon as practicable after this partition, Henshaw applied for a ferry license at that point, based on the rights and preferences given him by sections five and eight of the Ferry and Bridge Act.

Judgment was rendered reversing the order granting the license to Hale, and ordering it to be canceled, and the Board to dismiss his petition. And it was further " ordered, adjudged and decreed from the facts admitted by the petition of said Henshaw, and the remonstrance of said Hale, and as appears by the record certified up, that said James L. Henshaw was and is entitled, upon the showing made, to a license to keep and run a ferry across Feather river at the point prayed for in his said petition; and that said Board, under the facts in the case, exceeded its jurisdiction, in refusing to grant a license to said James L. Henshaw at the point prayed for in said petition.

" It is therefore ordered, adjudged and decreed, that the order of the said Board of Supervisors, in and for Butte county, in said State, made on the eighth day of June, 1860, at its regular May term for said year, refusing to grant a license to the said Henshaw, at the point as prayed for in his said petition to said Board, filed in said month, be and the same is hereby reversed, canceled and annulled; and the said Board should have granted, and should now grant, a license to the said James L. Henshaw to keep a ferry across Feather river, at the point and as stated in said Henshaw's petition, filed in his said application before said Board; and to this intent, this cause is remanded to said Board, with instructions to dismiss the application of said S. Y. Hale, and to grant a license to said J. L. Henshaw to establish and keep a public ferry across Feather river at the point petitioned for by him, on such terms and conditions as the law in such cases has made and provided, and to be governed by the principles and rules of law and facts, as announced by the Court in its decision herein filed."

From this judgment Hale and the Board of Supervisors appeal.

*H. O. Beatty*, for Appellant.

The County Court erred : 1. In issuing the writ of *certiorari*. Because it was a writ known to the common law, and has from time immemorial been used by common law Courts to restrain the proceedings of inferior tribunals of a *quasi* judicial character, and under the Constitution of this State the County Court can have no jurisdiction in such cases.

2. The Board of Supervisors exercised their discretion in a matter clearly within their jurisdiction. Having jurisdiction of the subject, and acting within that jurisdiction, their action cannot be reviewed by writ of *certiorari*.

3. The Board determined that the land upon the south-east side of Feather river was in the possession of S. Y. Hale & Co., and being in their possession, it was *prima facie* the land of Hale & Co. The Board could not properly inquire into the character of their title. They must treat it as if Hale & Co. had a perfect title. Having found, then, that Hale & Co. were the owners on one side, and Henshaw on the other, they had a discretion to grant the license either to Hale & Co. or to Henshaw, if it had been an original application ; but being for a renewal, the one formerly having the license was first entitled.

4. It was within the province of the Board to decide whether Hale & Co. were in possession of the land on the south-east side of the river. Having decided that question, the Court upon *certiorari* cannot review their decision. It cannot examine the weight of testimony upon which it was made, nor even the legality of the decisions of the Board as to the admission or rejection of testimony. There are many decisions to the effect that a superior Court cannot on *certiorari* for any cause look into the testimony. It cannot determine whether the testimony was legally admitted or refused, etc., but only whether from the return of the Board it shows it had jurisdiction over the subject matter. (*Haviland* v. *White & White*, 7 How. 154 ; *People ex rel. Agnew et al.* v. *Mayor, etc., of N. Y.* 2 Hill, 9 ; *Birdsall* v. *Phillips*, 17 Wend. 464 ; *People* v. *Judge of Duchess*, 23 Id. 360 ; *Prindle* v. *Anderson*, 19 Id. 391.)

Again, it has been decided that if the evidence is returned, the

Court cannot review it ; that the return *pro tanto* is a nullity. (See last three cases above cited.)

5. Even if the land on the south-east side was public land, not occupied by any one, and the land upon the opposite side the land of Henshaw, the Board had a discretion to grant a license to Henshaw or to a stranger. It is only when the land. on both sides belongs to the same individual that he has a vested right to the ferry privileges.

6. Supposing that the County Court had jurisdiction of the case, and all our former positions are wrong, still the Court exceeded its jurisdiction in this : that it not only restrains the Board from granting a license to Hale & Co., but it commands them to grant one to Henshaw, the latter being an interference with the discretion which is conferred upon them by law.

*Heydenfeldt,* also for Appellant, argued the case orally.

*Jos. E. N. Lewis* and *P. Ord,* for Respondent, filed elaborate arguments, which are not inserted because not reduced to points.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

Waiving, for the sake of the decision upon the merits, other matters, we think the judgment of the County Court should be reversed, for the reason that a review by certiorari cannot be had of the action of the Board, except for excess or want of jurisdiction. (*Whitney* v. *San Francisco Fire Department,* 14 Cal. 499.) The Supervisors have the *general* power to grant a ferry franchise, and to determine when, and under what circumstances, and to whom, it shall be granted. The act (Wood's Dig. 459) does not give an unqualified right to the owner of land, on either or on both sides of a stream, to demand a ferry license. The third section provides : "Any person may petition the Board of Supervisors for a license to keep a ferry or toll bridge, and if, in the discretion of the Board, such ferry or toll bridge be necessary, and the petitioner be a suitable person to keep the same, they shall order the Clerk of said Board to issue a license, on the payment of such license tax, for the term for which the license is granted, as the Board may

direct, not to exceed the rate of one hundred dollars, nor less than three dollars per month for such term, and filing with the Clerk the receipt and bond as hereinafter provided."

Section five provides: "Upon the production of the receipt of the County Treasurer to the Clerk of the Board for the amount of license tax assessed by said Board, and filing the bond as hereinafter required, said Clerk shall issue such license to keep a ferry or toll bridge at the place therein mentioned for a term not less than six months, nor more than one year; but no license to keep such ferry or toll bridge shall issue unless the land on which it is sought to establish such ferry or toll bridge be public land, or the land of said petitioner, or where the holders or owners of any land where the public convenience may require that such ferry or toll bridge shall be kept shall neglect or refuse to have a public ferry or toll bridge established within a reasonable time."

Section eight is as follows: " When any person, being owner or holder of any land lying on any river, creek, slough or arm of the sea, within or bounding on this State, except such as are by section two of this act exempted, where any public road may cross the same, and where the public convenience may require that a ferry or toll bridge should be kept, shall neglect or refuse to have a public ferry or toll bridge established within a reasonable time, it shall be lawful for the Board of Supervisors of the county in which it may be necessary to have such ferry or toll bridge established, upon proper application being made, and after having given three months' public notice of their intention, by advertisement in some public newspaper in the county, or by written notice set up in three of the most public places in the county, to grant a license to some person to keep a ferry or toll bridge at said place, on such conditions as to them may appear reasonable and just, taking bond with security, as hereinafter provided."

It seems that the holder of lands is put on the same footing, in respect to this privilege, as the owner.   We see no reason or positive provision in the statute which gives the owner of land on one bank of the stream any preference over one claiming and in possession of land on the other side ; but the reverse seems contemplated. Whether the proof showed to the satisfaction of the Board the fact

of the grant of previous license to Hale ; that Hale was the holder or possessor of this land on one bank of the stream ; that a ferry was necessary ; that Henshaw, if originally entitled in preference to Hale, has unreasonably neglected to apply to establish the ferry, are matters to be considered by the Board in the exercise of their jurisdiction.    The proceedings before the Supervisors seem to make a case for the legitimate action of the Board ; and even if we could inquire after this into the process by which the result was reached, or the sufficiency of the proofs, we see nothing in the record which required an interference with the action of this tribunal.

Judgment of the County Court reversed and cause remanded.

The above opinion and judgment were reaffirmed upon reargument.