4   385
4   482
10* 609
11* 509
11* 618
14* 804

4   385
13  230

# THE PEOPLE OF UTAH TERRITORY, EX REL., WILLIAM H. YEARIAN, *v.* ADAM SPIERS, JUSTICE OF THE PEACE.

PROHIBITION—POWER IN SUPREME COURT IN AID OF APPELLATE JURISDICTION.—The issuance of a writ of prohibition by the supreme court of Utah Territory, arresting proceedings already commenced in an inferior court, is in aid of the appellate jurisdiction of the supreme court and within its authority.

ID.—SUPREME COURT ORIGINAL JURISDICTION TO ISSUE WRITS OF.—The supreme court of Utah Territory has original jurisdiction to issue writs of prohibition under section 20, Code of Civil Procedure (Laws of Utah, 1884, p. 158).

ID.- -IN WHAT CASES ISSUED.—A writ of prohibition is properly issued from the supreme court to arrest the proceeding of an inferior tribunal, when such tribunal is acting without, or in excess of its jurisdiction, and there is no plain, speedy and adequate remedy in the ordinary course of law.

JUSTICES OF THE PEACE—JURISDICTION OF IN CRIMINAL CASES.—The organic act of Utah Territory (9 stat., 453, section 9) vests in justices of the peace a part of the judicial power of the territory, without specifying their jurisdiction in criminal cases; *held*, that the legislature of the territory could confer on justices of the peace no jurisdiction in criminal cases except that usually exercised by such justices at the date of the passage of said organic act.

ID.—ID.—Authority to impose a fine in any sum less than $300, and an imprisonment for a term not exceeding six months, is in excess of the jurisdiction which the legislature could confer on justices of the peace under the organic law of Utah Territory.

APPEAL, WHEN NOT AN ADEQUATE REMEDY.—When a justice of the peace is proceeding to try a case of which he has no jurisdiction, a writ of prohibition from a superior court arresting such proceeding is a proper remedy, although an appeal would lie from the judgment of the justice; in such a case an appeal is neither a speedy nor an adequate remedy.

GROUNDS FOR REHEARING—WHEN NOT SUFFICIENT.—A rehearing denied for the reasons stated in the opinion.

PRACTICE—NEW TRIAL IN SUPREME COURT.—A motion for a new trial of a proceeding originally commenced in the supreme court will be entertained under section 988 Code Civ. Proc. (Laws of Utah 1884).

Original application to the supreme court for a writ of prohibition. The opinion states the facts.

*Mr. John R. McBride*, for the relator.

*Mr. Le Grand Young*, for the respondent.

BOREMAN, J.:

This is an application for a writ of prohibition. The petitioner was arrested on a warrant issued by the defendant, a justice of the peace, upon a complaint charging him with having resorted to a house of ill-fame for lewdness. Upon being taken before the justice the petitioner applied to have the matter submitted to the grand jury, which was then in session, but the justice decided that he had jurisdiction of the case, and required the petitioner to enter into bond in the penalty of $1000 for his appearance to answer the charge in the justice's court, and a time for the trial was fixed. Prior to the time set for the trial the petitioner, upon his affidavit, made application for a writ of prohibition to restrain and prohibit the justice from further proceeding in the case, on the ground of want of jurisdiction, and excess of jurisdiction, in the justice of the peace to hear, try, and determine the matter. An alternative writ was issued, returnable into this court. The defendant filed his demurrer and answer to the petition. The demurrer and the case made by the petition and answer were argued together by the counsel for the respective parties, and we shall consider them together.

The demurrer was based upon the grounds that this court had no original jurisdiction of the subject of the action, and that the writ or petition did not state facts sufficient to constitute a cause of action. This court can have no power to issue the writ of prohibition, unless it be conferred by the organic act, or some other act of Congress, or by some territorial statute within the power of the legislature to pass. The organic act of the territory (9 St. at Large, 453, sec. 9) provides that "the said supreme and district courts, respectively, shall possess chancery as well as common-law jurisdiction," and the supreme court of the United States says that this language "includes almost every matter, whether of civil or criminal

cognizance, which can be litigated in a court of justice:"
*Ferris* v. *Higley*, 20 Wall., 375.

We do not understand it to be denied that this court
would have jurisdiction to issue the writ in aid of its ap-
pellate powers. The denial seems to go only to its power
to issue the writ as an independent, original writ. This
court, possessing appellate powers, has, as a part thereof,
a superintending control over the inferior tribunals of
justice throughout the territory, and has likewise a right
to protect and enforce its appellate powers. The supreme
court of the United States, although authority to issue
writs of this class otherwise than as part of its appellate
jurisdiction is denied to it by the constitution, which for-
bids its exercising any other than appellate powers gen-
erally, yet is held to be empowered to use these writs in
aid of its appellate powers. In *Marbury* v. *Madison*, a
*mandamus* case, that court recognized that *mandamus*
could be used as part of its appellate powers, and it de-
clared that "it is the essential criterion of appellate juris-
diction that it revises and corrects the proceedings in a
cause already instituted, and does not create the cause:" 1
Cranch, 175.

The same court again, upon certain applications for writs
of *habeas corpus*, through Chief Justice Marshall, in the
opinion of the court, seemed to place *habeas corpus* and
*mandamus* in the same class, and referred to the case
of *Marbury* v. *Madison*, and held that in the matter
then before the court the appellate powers alone of the
court were sought to be exercised; that in granting the
writs of *habeas corpus* it was the purpose to revise the de-
cision of an inferior court by which a citizen had been
committed to jail; and that such revision was simply the
exercise of appellate jurisdiction: *Ex parte Bollman*, 4
Cranch, 75–101.

In the case at bar it is likewise sought to revise and
correct the proceeding in a cause already instituted, and
not one created by this court, and to prevent further action
where the court below is claimed to be acting without au-
thority of law, and which, without authority, may commit
a citizen to prison. The writ of prohibition is oftentimes

resorted to in aid of the appellate power of the court, for the purpose of preventing unauthorized action by an inferior court, and to control the action of the lower court. 1 Abb. Pr. (N. S.) 341; 2 Abb. Pr. (N. S.) 214. We are, therefore, inclined to think that it is only necessary to invoke the appellate powers of this court in order to obtain sufficient authority for issuing the writ in the case at bar.

It seems clear, then, that authority in this court to issue these writs—at least in aid of the appellate jurisdiction of the court—is conferred under and by the general language of the organic act granting chancery and common-law jurisdiction, and authorizing appeals to this court. But the more consideration we give to this general language, "chancery and common-law jurisdiction," the more strongly are we inclined to hold that, under it, this court has full power to issue these writs, not only in aid of the appellate jurisdiction of the court, but also as an independent, original proceeding, aside from appellate powers. From the reasoning of the supreme court of the United States we are inclined to think that that court would have so held in regard to its own powers had it not been for the prohibiting clause of the constitution: Const. art. 3, sec. 2, cl. 2. There is no such prohibition upon the original jurisdiction of this court. It is evident that if the language of the original act was to cover those writs at all, they were to cover the writs as known at the common law.

At common law the writ of prohibition and the other writs, were used, not only in aid of appellate jurisdiction, but also as original, independent writs, aside from appellate power of the court issuing the same. The question as to the power of this court to issue the writ of prohibition has never heretofore been presented to this court, but the authority to issue writs of *certiorari* and *mandamus*, which belong to the same general class of special proceedings as prohibition, has been passed upon.

In the case of *Shepperd* v. *Second District Court* it was held that this court could issue the writ of *mandamus* in aid of its appellate jurisdiction, and not otherwise: 1 Utah, 340.

In the case of *Young* v. *Cannon* it was held that this court had jurisdiction to issue the writ of *certiorari* under the territorial statute: 2 Utah, 560; Civil Proc. Act, section 434 (Comp. Laws, 521), similar to section 951 of present Code of Civil Procedure (Laws 1884, p. 322.)

In the case of *Maxwell* v. *Burton*, 2 Utah, 595, it was held that this court had jurisdiction to issue the writ of *mandamus* under territorial statutes, and that such provision was not in conflict with the Poland act, giving exclusive jurisdiction to the district courts in certain matters, and that the case of *Shepperd* v. *Second District Court,* in so far as it held a contrary doctrine, was disapproved: Civil Proc. Act, sec. 445 (Comp. Laws, 523); Poland Act, Supp. Rev. St., U. S., *c.* 469, p. 105.

The conclusion to be drawn from these decisions is that whether this court has, under the organic act, and subsequent acts of Congress, original jurisdiction or not to issue the writs of this class, is not material, as the legislature of the territory has authority to give such jurisdiction, and has done so. If the legislature has such authority, and has exercised it, and has in clear and plain terms conferred upon this court such original jurisdiction, then this court has such authority in any phase of the case in which it may be viewed. The organic act (section 6) provides "that the legislative power of said territory shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act." The question of jurisdiction, so long as the action thereon is consistent with the Constitution of the United States and the laws of Congress, is held to be a rightful subject of legislation: *Ferris* v. *Higley,* 20 Wall., 375.

Our attention has not been called to any provision of the Constitution, or of the organic act, or any other act of Congress, with which such legislation would be inconsistent, nor do we know of any such provision, or believe that any exists. There being, then, no known inconsistency, the conclusion is inevitable that the legislature has the power to confer the jurisdiction on this court to issue the

writ as an original independent writ aside from any appellate jurisdiction possessed by the court. The Code of Civil Procedure declares that the writ may be issued "by any court except probate and justices' courts" (Laws 1884, p. 326, sec. 983); and it further provides (Id. 158) as to the supreme court, as follows:

"Sec. 19. The jurisdiction of this court is of two kinds: *First*, original; *second*, appellate.

Sec. 20. Its original jurisdiction extends to the issuance of writs of mandate, *certiorari*, prohibition, *habeas corpus*, and all writs necessary to the complete exercise of its appellate jurisdiction."

When the decisions of this court already referred to were made, these two sections had not been enacted. The authority to this court to issue the writ of prohibition as an original writ could not well have been couched in broader terms. The jurisdiction is as complete as the legislature could make it. The court is therefore of the opinion that it is, beyond doubt, within the power of this court to issue the writ, either as an original writ, independent of the appellate powers of the court, or as a writ in aid of such appellate powers.

The authority of the court to issue the writ being established, we are next to consider whether a proper case has been made for the issuance of the writ. At common law the writ was issued "upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court;" and it could be issued where there was a total want of jurisdiction in the inferior court to hear, try, and determine the case, or when there was an excess of jurisdiction in proceeding in the case: 3 Bl. Comm., 112; 8 Bac. Abr., 206. The office of the writ is to prevent an unlawful assumption of jurisdiction, and the writ lies when the inferior court acts in excess of, or is taking cognizance of matters not arising within its jurisdiction. *Ex parte Gordon*, 104 U. S., 515. Our territorial statute says that the writ "arrests the proceedings of any tribunal," etc., "when such proceedings are without or in excess of the jurisdiction of such tribunal," etc., and that it may be

issued "in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law." Laws 1884, p. 326, secs. 982, 983. It is well settled that the writ can never issue for error or irregularity in the exercise of jurisdiction; there must be a total want or an excess of jurisdiction.

In the case under consideration were the proceedings of the justice "without or in excess of the jurisdiction of such justice?" The provision of the territorial statute under which the complaint against the petitioner was filed before the justice reads as follows:

"Every person who keeps a house of ill-fame in this territory, resorted to for the purpose of prostitution or lewdness, or who willfully resides in such house, or resorts thereto for lewdness, is guilty of a misdemeanor:" Comp. Laws, p. 603, sec. (1996).

The penalty for such offense is prescribed in section 1847 of the Compiled Laws, as amended, so as to read:

"Except in cases where a different punishment is prescribed by this code, every offense declared to be a misdemeanor is punishable by imprisonment in a county jail not exceeding six months, or by a fine in any sum less than $300, or by both:" Laws 1878, p. 5.

As there is no different punishment anywhere in the statute prescribed for the offense charged in the complaint against the petitioner, of resorting to a house of ill-fame for lewdness, the punishment specified in the last section of the statute above quoted applies to it. The territorial statute further provides, in bracket section [2301] of the Compiled Laws, as amended in the Laws of 1878, p. 6, as follows:

"[2301.] Magistrates have jurisdiction to hear, try, and determine all public offenses arising in their respective counties, wherein the punishment prescribed by law does not exceed six months' imprisonment in a county jail, or a fine in any sum less than $300, or by both."

The term "magistrates," as used in the statutes, includes "justices of the peace:" Laws 1878, p. 71, sec. 56. In regard to justices' courts, the statute further provides that they shall have jurisdiction of "breaches of the peace,

committing a willful injury to property, and all misde-meanors punishable by a fine less than $300, or impris-onment in the county jail or city prison not exceeding six months, or by both such fine and imprisonment." Laws 1884, p. 162, sec. 48. The territorial statute in re-gard to "criminal cases in justices' courts" provides that a fine may be paid in proportion of one day's imprison-ment for every dollar of fine and costs. Laws 1884, p. 145, sec. 48.

If, therefore, the justice sentence a party to imprison-ment for six months, and to pay a fine of $299.99 and costs, as is done sometimes, and the party be unable to pay the fine and costs, his imprisonment would be extended to about 18 months. This certainly is an extraordinary power to confer, in a mere summary proceeding, upon a justice of the peace, and it ought not to be upheld unless expressly conferred by some competent authority. This competent authority in a territory must be a law of Con-gress, or else territorial statute enacted within the limits prescribed by act of Congress. The Poland act (section 3) confers upon justices of the peace, in civil matters, jur-isdiction to the extent of any sum less than $300, but it does not, nor does any act of Congress, speak of the juris-diction of justices of the peace in criminal matters. It would seem, therefore, that we would not be authorized in assuming that Congress, in conferring this extended juris-diction in civil matters, contemplated that justices of the peace could, without a like express authority of Congress, be invested by the territorial legislature with criminal jur-isdiction to a much greater extent than Congress had given them in civil matters. It does not seem reasonable that Congress should confer the civil jurisdiction and pre-scribe its limits, and, by leaving the criminal jurisdiction unprovided for, authorize and license the giving by the local legislature of a more extended jurisdiction in crim-inal matters.

The only authority given by law of Congress to the legis-lature to confer any jurisdiction whatever in criminal matters is to be found in the name or title of the office. The judicial power of the territory is vested in a supreme

court, district courts, probate courts, and justices of the peace. General common-law and chancery jurisdiction is given to the supreme and district courts alone, yet justices of the peace and probate courts are depositaries of part of the judicial power of the territory, and the question now is, what part?

Jurisdiction is, as we have seen, a rightful subject of legislation by the territorial legislature, provided that such legislation must be consistent with the Constitution of the United States and the laws of Congress. Within these boundaries the extent of the judicial power of the territory that is vested in justices of the peace as well as probate courts must "be as limited by law."

The petitioner maintains that the above-mentioned sections of the territorial statute, purporting to confer upon justices of the peace the power to punish for misdemeanors to the extent of imprisonment for six months, and by fine in any sum less than $300, are in violation of the organic act and Poland act, and therefore void as being beyond the power of the legislature to confer; that the legislature could invest said officers with no power not embraced in the name or title of the office.

In the organic act the jurisdiction of probate courts was likewise not otherwise designated or defined than by the name or title of the courts, but it was declared that in them was vested a part of the judicial power of the territory; and the supreme court of the United States, in speaking upon the question as to what jurisdiction can be conferred by the territorial legislature upon the probate courts, said: "The answer to this must be sought in the general nature and jurisdiction of such courts as they are known in the history of the English law and in the jurisprudence of this country:" *Ferris* v. *Higley*, 20 Wall., 375. Similar views were held by the supreme courts of some of the territories prior to its announcement by the supreme court of the United States: *Cast* v. *Cast*, 1 Utah, 127; *Golding* v. *Jennings*, Id., 135; *People* v. *Du Rell*, 1 Idaho, 44, 142; *Locknane* v. *Martin*, McCahon, 60; *Dewey* v. *Dyer*, Id., 77; *Otis* v. *Jenkins*, Id., 87.

If, in order to ascertain what jurisdiction can be exercised by probate courts, we must thus look to the general nature and jurisdiction of such courts, for the reason that there was no specification of their jurisdiction in the organic act further than a simple naming of the courts, we are, as a logical result, in order to ascertain the jurisdiction that can be exercised by justices of the peace in criminal matters, in a like manner to look to the general nature and jurisdiction of such officers "as they are known in the history of the English law, and in the jurisprudence of this country;" and this is the view held by the supreme courts of some of the territories when considering the question as to the jurisdiction of justices of the peace: *Moore* v. *Koubly*, 1 Idaho, 55; *Territory* v. *Flowers*, 2 Mont., 531; and this seems to be the general rule (*Byers* v. *Com.*, 42 Pa. St., 89; Sedg. Const. St., 491, note).

If, in endeavoring to ascertain what jurisdiction can be conferred upon justices of the peace by territorial statute, we were guided wholly by what such jurisdiction was at common law, we would be forced to conclude that justices of the peace had no jurisdiction whatever of this class of offenses, for at common law they were not cognizable before a justice of the peace, but were indictable offenses, and infamous: 4 Bl. Comm. 64, 167; *People* v. *Sponsler*, 1 Dak., 289. But subsequently in England, and in the United States, such offenses have been by statute committed, in many instances, to justices of the peace, and such was the common practice in this country at the time when the laws of Congress referred to in regard to this territory were enacted, but the penalties were generally limited to petty fines and short imprisonments.

We do not find it to have been a practice to invest them with power to inflict punishments as extensive or extraordinary as are sought to be conferred upon such officers by the territorial statutes we have referred to, and especially to grant to justices of the peace greater jurisdiction in criminal cases than in civil matters. If there were any such instances, they were exceptions to the general rule. It would hardly be claimed that the legislature could have invested justices of the peace with civil jurisdiction

to the extent of $300, or of any sum approaching it, had not Congress in express language authorized it. Neither do we think that the legislature could do so in criminal matters without some such express authority by Congress; yet it is claimed in the case before us that the legislature can not only confer such jurisdiction in criminal matters, but can go further, and add imprisonment for a period of six months. We cannot think that Congress ever intended to allow such legislation by the territorial legislature: *People* v. *Maxon*, 1 Idaho, 330.

It is, however, claimed that admitting the justice had no jurisdiction, yet that the writ of prohibition is not the proper process to reach the defect, as there was a remedy in the ordinary course of law, by appeal, and that this remedy was plain, speedy, and adequate. An appeal could be resorted to only after final judgment. It could not have stopped the proceeding in the justice's court. It could not have prevented the justice from forcing the petitioner into an unauthorized and illegal trial, nor from compelling him, if convicted, to take an appeal and give bond in at least double the amount of the fine, with at least two sureties, or, in default thereof, to go to jail, and yet, upon the appeal, the whole proceeding would have to be dismissed on the ground that the justice had no jurisdiction to hear the case, and, as a consequence, the appellate court could have none. There could be no trial of the merits in the district court because no such trial was authorized in the court below: *Southern Pac. R. Co.* v. *Superior Court*, 59 Cal., 471; *Peacock* v. *Leonard*, 8 Nev., 84; *Stephens* v. *Boswell*, 2 J. J. Marsh, 29; *Brondberg* v. *Babbott*, 14 Neb., 519; S. C. 16 N. W. Rep., 845; *Wolcott* v. *Territory*, 1 Wyo., 67; *Coobam* v. *Bryant*, 36 Wis., 605; *Felt* v. *Felt*, 19 Wis., 199; *Stringham* v. *Supervisors*, 24 Wis., 594; *Barthelemy* v. *People*, 2 Hill, 257.

To compel a party to submit to being forced through this tedious and harassing routine of illegal proceeding and usurped jurisdiction is not only expensive and troublesome, but also vexatious in the extreme, and ought not to be allowed if it can be prevented. If there be no remedy by writ of prohibition in a misdemeanor case, by reason of

there being an appeal, there is none in a felony case. In both the justice acts *coram non judice*, but the statute allows appeals from judgments of a justice in *all cases*. But an appeal would not be either a speedy or adequate remedy in either a misdemeanor or a felony case. A party charged with any offense has the right to have it investigated in a proper court, and in a legal manner, and cannot be compelled to submit to an illegal and unauthorized investigation. He has the right to a legal investigation, not only because the illegal investigation is in itself unjust, but also because the party is entitled to have a judgment that he may plead in any subsequent proceedings upon the same charge. No citizen should be arrested and prosecuted before a court having no authority to hear, try, or determine the case.

It will be observed that this is not a case where the justice has acted within the scope of his general jurisdiction, and in doing so has merely exceeded his jurisdiction, but it is one where he has acted wholly "without" his jurisdiction. There is a total want of jurisdiction in him to hear, try, and determine the case: *Clary* v. *Hoagland*, 5 Cal., 476. Where a justice has general jurisdiction of the subject-matter, but has simply exceeded his jurisdiction, an appeal might be an adequate remedy, for in the appellate court the merits of the case could be examined into and the matter legally settled: *Ex parte Pennsylvania*, 109 U. S., 174; *Ex parte Gordon*, 104 U. S., 516. See also, *Ex parte Ferry Co.*, 104 U. S., 519; and *Ex parte Hagar*, Id. 520; *Henshaw* v. *Supervisors*, 19 Cal., 150; *Clark* v. *Superior Court*, 55 Cal., 199.

But as we have already seen, this cannot be done when the justice acts wholly without jurisdiction, for in that case the appellate court can have no more authority to try the merits of the case on appeal than the justice from whose judgment the appeal was taken. The trial then in the justice's court would be a solemn mockery of justice. The punishment of the party could only be hoped for where he would be unable to take an appeal, for if an appeal be taken the proceedings would be dismissed by reason of the want of jurisdiction in the justice. The judg-

ment would not shield the party charged from subsequent arrest and prosecution for the same offense. No good purpose could be served. It would be a fruitless work. A justice of the peace cannot be given unlimited power. Nothing is presumed in favor of his jurisdiction; it must be shown affirmatively. It is no satisfaction to a citizen, when arrested and forced upon his trial before a court upon a criminal charge, to be told that, although the proceedings are wholly illegal and void, he will have to submit to it, because when it is all through with he can take an appeal to the district court, and there have the proceedings dismissed. If an injury would be then done him, why not dismiss at once, and save him from being harassed and criminally dealt with upon unauthorized prosecutions? It would seem to be the duty of an appellate court to check such proceedings at the earliest possible moment. If a party desired a trial *de novo*, and that can be had in the appellate court, an appeal might be deemed an adequate remedy; but where there cannot be a trial *de novo*—a trial on the merits in the appellate court—an appeal would be vain and fruitless. It would settle nothing concerning the subject-matter of the action: *Golding* v. *Jennings*, 1 Utah, 135; Dill. Mun. Corp. sec. 744, note 2.

The law does not limit a party to a process that will be fruitless when there is one that may prove available: *Paul* v. *Armstrong*, 1 Nev., 95, 96. The remedy, in the ordinary course of law, must not only be specific, adequate, and legal, but it must be one competent to afford relief upon the very subject-matter of the petition: *Fremont* v. *Crippen*, 10 Cal., 211; *Babcock* v. *Goodrich*, 47 Cal., 508; *North Bloomfield G. M. Co.* v. *Keyser*, 58 Cal., 315.

An appeal in the case at bar would not be either a speedy or an adequate remedy. When all the proceedings should be gone through with in the justice's court, and in the district court on appeal, the petitioner would be left just where he stands when he makes this application for the writ of prohibition. It would not relieve him from the stain of the charge, and yet would afford him no relief by a lawful investigation. The charge made against the petitioner is one that can be investigated by a grand jury,

and if he be deemed guilty he should be indicted and punished; but, whether guilty or innocent, the law guarantees to him a legal investigation and trial, and these cannot be had in a court or before an officer acting wholly without authority of law. A party charged with an indictable criminal offense is, by the Constitution, guaranteed also a trial by jury. A pretended jury of six men is not a jury as known at common law, nor as contemplated by the Constitution and laws of the United States. Such a jury is composed of 12 men: 3 Bl. Comm. 352; *Work* v. *State*, 2 Ohio St., 396; *Wynehamer* v. *People*, 13 N. Y., 378; *State* v. *Everett*, 14 Minn., 439; (Gil. 330;) *Vaughn* v. *Scade*, 30 Mo., 600; *Bowles* v. *State*, 5 Sneed, 360.

The prevailing doctrine now is that, although there be no jury in the inferior court, yet if by appeal a party may have a trial by jury, the constitutional guaranty of trial by jury is not violated: Dill. Mun. Corp. 367; Sedg. Const. 491, notes and cases cited. Where, however, a justice acts wholly without his jurisdiction, and there be no provision for a jury trial in his court, nor in the appellate court, the objection that there is no jury trial in the justice's court is not satisfied by the appeal. In the present case no jury is authorized in the justice's court, and none can be had in the district court, as the case would have to be dismissed in the appellate court without trial. No jury would be authorized in the district court, for the reason that no trial could be had there upon the merits. The justice having no jurisdiction to try the case, the district court could acquire none by the appeal, as we have already seen. Upon the whole case, therefore, we conclude that the justice was acting, and proceeding to further act, wholly without his jurisdiction, and that the petitioner had no plain, speedy, and adequate remedy in the ordinary course of law, and is therefore entitled to his writ of prohibition.

As the points we have considered are decisive of the case, it is unnecessary for us to examine the other questions raised by the petition.

The peremptory writ of prohibition is by the court allowed, with costs.

POWERS, J., concurring.

Accusations of criminal conduct are tried at the common law by jury; and, wherever this right is guaranteed by the Constitution without qualification or restriction, it must be understood as retained in all those cases which were triable by jury at the common law, and with all the common law incidents to a jury trial, so far, at least, as they can be regarded as tending to the protection of the accused. A petit jury is a body of 12 men who are sworn to try the facts of a case as they are presented in the evidence placed before them. Any less than this number of 12 would not be a common law jury, and not such a jury as the Constitution guarantees to the accused parties.

In the case at bar I think that the accused was entitled to a common law jury—that is, a jury of 12 men; and I agree with Judge Blatchford (*Dana's Case,* 7 Ben. 1) that to require a defendant to be convicted by a judge, or by six men, in order to have a trial in another court upon appeal, is too much a mockery to be regarded as in any just sense a compliance with the constitutional guaranty. I do not think that the objection to the proceedings of the justice's court is removed by the fact that a man can appeal his case, and secure a jury trial in the court above. It does not seem to me to be good reason or good law to compel a man accused of crime to submit to the proceedings of an unauthorized tribunal, saying to him in the meanwhile: "Although you are being tried unlawfully, if you do not like the result you can have a trial before a higher court." I agree with counsel for the petitioner that "it is not an answer to say that a justice has jurisdiction, without the means to enforce it, by reason of not being supplied with a jury. A court cannot be said to have a jurisdiction which it cannot constitutionally exercise." Jurisdiction is the power to hear, try, and determine. A justice has no inherent power to summon a jury. He cannot summon one unless the statute authorizes the act. The statute directing a justice to summon a jury of six is a denial of his power to impanel any other number. It is in fact the exclusion of any jury, because six men are not a jury in a case where a common law jury is required.

The writ of prohibition in the present case is asked to prevent an illegal trial of the case—to prevent the injury resulting therefrom. An appeal after the injury sought to be prevented is committed is no remedy. For these reasons and others stated in the opinion of the court, I concur.

ZANE, C. J., dissented.

A petition for a rehearing having been filed, the following opinion was rendered, thereon.

BOREMAN, J.:

A rehearing is asked upon the ground that the defendant did not have a fair hearing in the argument; that is, that he was not heard orally, as he believes he had the right to be heard. The filing of the petition for rehearing was the first notice the court has had that the defendant considered that he had not had a fair hearing in the argument in this case. We do not think this position of the defendant is warranted by the facts. The defendant had the same opportunity that the plaintiff had to be heard orally, but of his own will he chose not to avail himself of the opportunity, and preferred not to extend his oral argument beyond the demurrer. It was not the court's action that prevented his oral argument from covering the whole case. The hearing was upon the whole case, and it was his own will, and not the court's order, that confined his oral argument to the demurrer. Having given one opportunity for oral argument, it was not necessary that the court should give another, unless some good reason were offered therefor. But no reason whatever was advanced why a second hearing should be granted, and it was not made known to the court, at the time, that there was any anxiety on the part of the defendant to be heard orally. Yet if, when notified of what the action of the court would be upon the demurrer, the defendant had expressed to the court a desire to be heard orally upon the case, it is probable that his desire would have been granted, if such hearing would not have interfered with the regular business of the term.

When the court was about to adjourn for a length of

time to enter upon district court business, and to consider the cases submitted, the defendant for the first time signified a desire to be further heard, but the court was not then given to understand that the defendant was anxious to be heard orally. It was then announced by the court that any further arguments or briefs that counsel might desire to present might be filed within a specified time, and they would be considered. This was supposed to be satisfactory, and it was not understood that any objection was, at the time, made to such arrangement. The defendant filed his brief accordingly, and the same was duly considered. We do not think that any valid reason has, in the petition, been advanced why a rehearing should be granted, and it is therefore denied.

The defendant has also filed his motion for a new trial, in which he raises the same questions that were raised upon the hearing. This being an original proceeding in this court, we are of the opinion that such motion is proper under section 988, of our Code of Civil Procedure, which makes the provisions of the Code relative to new trials in the district court applicable to this proceeding, except where the same would be inconsistent with other provisions of title 1 of the Code. We understood the defendant to have submitted the motion for new trial already; but, in order that he may be fully heard, we have no objection to extend to him the privilege of being heard orally or otherwise upon his motion for new trial.

ZANE, C. J., and POWERS, J., concurred.