Mr. Justice MIIfLER,
 

 delivered the opinion of the eourt.
 

 ■ 'The single question in this ease is whether the Probate Court had jurisdiction to-hear-and determine such an action as it heard and determined in the present case; and this must be decided by a construction of the statute 'of the Territory and the provisions of the act of Congress Organizing the Territory.
 

 A statute of the- Territorial legislature enacts that “the several Probate Courts, in their respective counties, have power to exercise original jurisdiction, both civil and criminal, .and as well in chancery as at common law, when not prohibited by legislative enactment, and they shall be gov
 
 *380
 
 erned in all respect's by the'same general rules and regulations as regards, practice as the District Courts.”
 

 In a very learned opinion of one of the judges-of the. Supreme Court of the Territory, we find an ingenious argument in support of the idea — though .thé case is not rtested on this ground — that this- provision was not intended to co'nfer jurisdiction, but was a mere declaration- of the opinion of .the Territorial legislature that the jurisdiction already existed. This is founded on the use of the words “ have power” in the p'reseqt tense, instead of “shall have power,” in the future.
 
 We
 
 have no doubt that the legislature intended to
 
 confer
 
 the power by that- sentence. No statute or other law existed previously by which any one ever supposed'that such power existed. The form of expression here used is not at all uncommon for that purpose, especially in enactments which, like this, are parts qf a general code of laws. The legislature was not in any manner called upon to give-its opinion of the powers of'the'Probate Court, but it was in fact making a geueral system of laws for the Territory. It-is incouceivanle' that it meant anything else but to establish the court and prescribe its jurisdiction.
 

 But the power of the legislature to confer this jurisdiction on the Probate Courts is a much more serious question.
 

 The organic act,-in defining the power of the Territorial legislature, declares that “it shall extend to all rightful.subjects of legislation consistent with the Constitution of the United States, and with that'act.”’
 

 We
 
 may, I think, assume, witlíoüt much hazard, that defining the jurisdiction of a.Probate Court, or, indeed, of any court, may be .fairly included within the general meaning' of the phrase rightful subject of legislation. Nor do we think there is anything in such legislation inconsistent with the Constitution of the United States. There remains then only the further inquiry whether it is inconsistent with any part of the orgánie act itself!
 

 That act established a complete'system of-local govern.ment. It stands as -the constitution or fundamental law of the Territory. It provides for the executive, legislative, and
 
 *381
 
 judicial departments of government. It prescribes their functions, their manner of appointment and election, their compensation and tenure of office; In regard to the judiciary, it creates the courts, distributes the. judicial power among them, and provides all the general machinery of courts, such as clerk, marshal, prosecuting attorney, &c.
 

 It'is here, then,'if anywhere, that-we should look for anything inconsistent with the power conferred on the Probate Courts by the- Territorial legislature.. The ninth section of the act declares that “ the judicial power of the Territory shall be vested, in a Supreme Court, District Courts, Probate Courts, and justices Of the peace,” and it-prescribes the organization Rud number of tide District Courts. The judges of these are appointed by the President, by and. with the advice and consent of the Senate of the United States. And then it declares that “the jurisdiction of the several .courts herein provided for, both appellate and original, and that of the Probate Courts, and of the justices of the peace, shall be,as limited bylaw: Provided, That justices of the peace'shall not have jurisdiction of any matter in controversy where the title or boundary of lands maybe in dispute, or where the debt or sum claimed shall exceed oné' hundred dollars, and the said Supreme and District- Courts, respectively, shall possess chancery as well as common-law. ■ jurisdiction.”
 

 Provision is made in the same section for-appeals and writs of error from the Distinct Courts to the Supreme Court • of the Térritory, and from'that court to the Supreme.Court of the United States* but no provision is made for any such review of the decisions-of the Probate Courts or of the justices of the peace.
 

 The common-law and chancery jurisdiction here conferred ou the District and Supreme Courts, is a jurisdiction very ample and very well understood; It includes almost every matter, whether of civil or criminal cognizance, which can be litigated in a court of justice. ,.The .jurisdiction of the justices of the peace is specifically limited as regards the moneyed value on which it may decide, and by the exclu
 
 *382
 
 sion of matters concerning veal estate. Of the Probate Courts it is only said that a part Of the judicial power of the Territory shall be vested in them. What part? The answer to this must be sought in the general nature and ju-risdic-' tion o'f such courts as they are kiiown in the history of the English law and in the jurisprudence of this country. It id a tempting subject to trace the history of the probate of wills and the. administration of the personal estates of der cedents, from the time that it was held to. be a matter of exclusive ecclesiastical prerogative, down to the present. It.is sufficient to say that’through it all; to the present hour, ,it has been the almost uniform rule among the people, who make' the common-law of England" the basis of their judir cial system, to have a distinct tribunal for the establishment of wills and the administration of the .estates of men dying either with or without wills. These tribunals have been variously called’Prerogative Courts, Probate Courts, Surrogates, Orphdns’ Courts, &c. To the functions more-directly appertaining to wills and the administration of estates,-have occasionally been added the guardianship of.infants and control of their property, the allotment of dower, and perhaps other powers related more, or less to the saíne general subject. Such -courts are not in their mode of proceeding governed by the rples of the common law. They are without juries and have no special system of pleading; They may pr may not have clerks, sheriffs, or other analogous officers. They were not in England considered originally as courts of record; and have never, in either that country or this, been made courts of general jurisdiction, unless the attempt to do so in this case be successful.
 

 Looking'then to the purpose of the organic act to establish a general system- of governfne'nt, and its obvious purpose to say what'courts shall exist'in the Territory, and how the judicial power shall be distributed among- them, and especially to the fact that all ordinary and necessaty jurisdiction is provided for in-the Supreme and District Courts, and that of the justices of the peace, and that.the jurisdiction of the Probate Court is left to rest on the general nature
 
 *383
 
 and character-of such courts as they are recognized in oür system of jurisprudence, is it not á fair inference'that it was not-intended that that court should be made one of general jurisdiction ? that it should not be converted into a court in which all rights, whether-civil or criminal, whether of common-law or chancery cognizance, whether involving life,, or. liberty, or property, should be lawfully-tried and determined ?
 

 For all such cases, when tidied in the District Courts, provision is made for correction of errors and mistakes by-appeal to a higher court. But no such provision is made in regard to the Probate Courts, a thing which certainly would have been done if it had been- supposed that all judicial power would have been vested in them.
 

 It is supposed that a sufficient answer tq this course of reasoning is found in the declaration of the ninth section of the organic act already cited, that the jurisdiction of the several courts therein provided for, “ shall be as limited by law:” The argument is that this refers to laws to be thereafter made by the Territorial legislature, and that as the power of that body extended to all rightful subjects of legislation, it extended to this of totally changing the jurisdiction of these courts. "We are not prepared to say that, in deciding what law is meant in this phrase, “as limited by law,” we are wholly to exclude laws made by the legislature of the Territory. There may be cases when'that legislature conferring new rights, or new remedies, or establishing anomalous rules of proceedings within their legislative power, may direct in what court they shall be had. Nor are we called on to ¡deny that the functions and powers of the Probáte Courts may be more specifically defined 'by Territorial statutes within the limit of the general idea of the nature of Probate Courts, or that certain duties-not strictly of that character may be imposed on them by that legislation.
 

 But we hold that the acts of, the legislature are not the qnly law to which we must look for the powers of any of these Territorial courts.. The general history of our jurisprudence and the organic act itself are also to be considered,.
 
 *384
 
 and any act of the Territorial legislature inconsistent with the latter must be held void. .We are of opinion that the one which we have been considering is inconsistent with the general scope and spirit of that act in defining the courts of the Territory, and in the distribution of judicial power amongst them, inconsistent with the nature and purpose of a Probate Court as authorized by that act, and inconsistent with the clause which confers upon .the Supreme Court and District Courts general jurisdiction in chancery as well as at common law. The fact that the judges of these latter courts are appointed by the Federal power, paid by that power— that other officers of these Courts are appointed and paid in like manner — strongly repels the idea that Congress, in conferring oil'these courts all the powers of courts of general jurisdiction, both civil and criminal, intended to leave to the Territorial legislature the power to practically evade or obstruct the exercise of those powers, by conferring precisely the same jurisdiction on coürts created and appointed hy the Territory.
 

 The act of- the Territorial legislature conferring general jurisdiction in chancery and at law on the Probate Courts is, therefore, void.
 

 This view is supported by the decisions of courts of Kansas,
 
 *
 
 on a similar statute; by decisions in Idaho,
 
 †
 
 and by the decisions of the Supreme Court whose judgment we are here called on to reverse.
 

 Judgment aeeirmed.
 

 The CHIEF JUSTICE, not having heai'd the argument, . took no part in the decision of this case.
 

 *
 

 Locknane
 
 v.
 
 Martin, McCahon, 60; Dewey
 
 v.
 
 Dyer, Ib. 77; Mayberry, Graham et al.
 
 v.
 
 Kelly, 1 Kansas, 116.
 

 †
 

 The People v. Du Rell, 1 Idaho, 30; Moore v. Konbly, Ib. 55.