TERRITORY, appellant, *v.* FLOWERS, respondent.

JURISDICTION OF OFFENSE OF ASSAULT AND BATTERY. The legislative assembly conferred upon the district court "jurisdiction of all offenses not cognizable in the probate or justice of the peace courts." F. was indicted at a term of the district court for the statutory crime of assault and battery, which was within the jurisdiction of the probate court. A demurrer to the indictment on the ground that the court had no jurisdiction was sustained. *Held,* that the district court, notwithstanding this statute, had jurisdiction of the crime under the ninth section of the Organic Act of the Territory, which confers upon it " common-law jurisdiction."

" COMMON-LAW JURISDICTION" DEFINED. Said clause, " common-law jurisdiction," refers to the right to hear and determine every case at law, excepting suits in equity and admiralty, and matters in courts-martial, and embraces criminal actions which are cases at law

CONCURRENT JURISDICTION OF CRIMES. The second section of the amendment to the Organic Act, approved March 2, 1867, which confers upon the probate court jurisdiction of certain " criminal cases," does not deprive the district court of its jurisdiction of the same. The jurisdictions in these cases are concurrent.

RULE FOR DETERMINING JURISDICTION OF COURTS. The jurisdiction of the courts created by the Organic Act is determined by referring to said act, the statutes of the Territory, and the general history of jurisprudence throughout the United States.

*Appeal from Third District, Jefferson County.*

THE demurrer was sustained by WADE, J.

J. G. SPRATT, District Attorney, First District, for appellant.

JOHNSTON & TOOLE, for respondents.

KNOWLES, J. The respondents were indicted for an assault and battery in the district court for the county of Jefferson. They demurred to the indictment on the ground that said court had no jurisdiction of such an offense. The court below sustained the demurrer, and the district attorney for the first judicial district, on behalf of the Territory and in its name, in accordance with the statute allowing the same, appealed the case to this court, and assigns this ruling as error.

The sixth section of the Criminal Practice Act of this Territory confers jurisdiction upon the district courts in these words: "The district court shall have jurisdiction of all offenses not cognizable in the probate or justice of the peace courts, and of all common-law offenses." Cod. Sts. 190, § 6. The punishment prescribed by our statutes for the crime of an assault and battery brings it within the jurisdiction of the probate court. Cod. Sts. 279, § 58. The grant of jurisdiction to the district court over "common-law offenses" does not meet the difficulty presented in this case. Although the crime of an assault and battery was known to the common law, it is a statutory offense, having been so created by our statutes. The clause of the statute which confers common-law jurisdiction upon the district court was intended to give that court cognizance of the offenses specified in the one hundred and eighty-fifth section of the Criminal Laws, which provides that "all offenses recognized by the common law as crimes, and not here enumerated, shall be punished * * *." Cod. Sts. 312, § 185. Unless the district court receives jurisdiction to determine this case from some other source than the statutes of the Territory it does not possess it.

The ninth section of the Organic Act of the Territory provides that the "supreme and district courts respectively shall possess chancery as well as common-law jurisdiction." The question presented to us is this: does this grant of jurisdiction to the supreme and district courts authorize them to hear and determine such a cause as the one before us, without any provision of the statutes of the Territory, or in contravention of its statutes. What does the term "common-law jurisdiction" imply? Bouvier describes courts in his Institutes as follows: "When considered as to the object of their jurisdiction, they are (1) courts of common law; (2) courts of equity; (3) courts of admiralty; and (4) courts-martial." * * * "Courts of common law are established to protect legal rights and to redress legal injuries. The remedies for the redress of wrongs and for the enforcement of rights are distinguished into two classes: first, those which are administered in courts of common law; and secondly, those which are administered in courts of equity. Rights, which are recognized and protected, and wrongs, which are redressed by the former

courts, are called legal rights and legal injuries." 3 Bouv. Inst. 72. Blackstone classifies wrongs as private and public. Public wrongs include crimes.

All wrongs are legal injuries. Common-law courts then have for one of their objects the redress of public wrongs, or in other words, the punishment of crimes. A court having common-law jurisdiction has the same jurisdiction as common-law courts. The only meaning that can be derived from the phrase "common-law jurisdiction," is the right to hear and determine cases at common law. This is what common-law courts were instituted for. It is believed that the language used in our Organic Act, "common-law jurisdiction," was intended to vest in the district courts and supreme court of the Territory the same jurisdiction as was possessed by all the superior common-law courts of England. The judicial system that prevailed in most of the States at the time the Organic Act was enacted by congress (of which the one for this Territory is a copy), included one court having jurisdiction of all common-law causes, civil and criminal, and that the intention of congress at that time, and when our Organic Act was passed, was to provide for a judicial system similar to that which had prevailed in most of the States, and which the great mass of the citizens of the United States were familiar with. Even while the oldest States were colonies of Great Britain, they never had a judicial system that coincided with that of the mother country. Generally, with them, one court had all of the original jurisdiction that was possessed by the several superior courts of common law in England, and this was said to possess common-law jurisdiction. See Graham on Jurisdiction, 139, 140, as to the jurisdiction of the supreme court of New York when that State was a colony. And here we have the origin of this phrase. A court that had common-law jurisdiction had the right to hear and determine every case that did not fall within the classes known as suits in equity or admiralty, or matters of which a court-martial took cognizance. It had the same jurisdiction as the combined jurisdictions of the several superior common-law courts of England. When a new legal right was created, or a legal wrong proscribed, it was not necessary to pass a statute giving any court jurisdiction of the same, for a court having common-law jurisdiction had so

general and enlarged a jurisdiction of all legal remedies, that it could take cognizance of any action involving the determination of the same. In the case of *Parsons* v. *Bedford*, 3 Pet. 433, it was held that suits at common law, as specified in the seventh amendment to the constitution of the United States, included all suits not of equity or admiralty jurisdiction, and was not confined to cases which were known to the old and settled proceedings at the common law. Suits at common law signify nothing more than cases at law. This is undoubtedly the proper construction of the phrase " common law," as used in our Organic Act. Actions at common law signified formerly every case not of equity or admiralty jurisdiction, or cases within the cognizance of a court-martial. Now cases at law occupy the same position. They embrace every class of cases not of one of these jurisdictions. If we take the above decision as a guide, cases at law and cases at common law are convertible terms, when applied to the jurisprudence of the United States. Both are used to designate a class of cases that are not known as equity or admiralty suits, or matters within the cognizance of courts-martial. Once this class of cases was known as cases at common law, now cases at law. Whenever then a case is known as one at law, or at common law, any court whose jurisdiction is described by the language, " law or common law," can take cognizance of it. A criminal action is one at law. It is a public wrong which is redressed by an action in the name of the people in their collective or aggregate capacity. A private wrong is redressed in the name of the party injured. An indictment with us is nothing but a pleading on the part of the Territory. From a review of the common-law writers, it will be seen that a criminal action is always classed as one at law. Chitty's Blackstone, bk. 3, pp. 1, 2; id., bk. 4, p. 4. " For pleas or suits are regularly divided into two sorts, pleas of the Crown, which comprehend all crimes and misdemeanors, wherein the king on behalf of the public is the plaintiff, and common pleas, which include all civil actions depending between subject and subject. Chitty's Blackstone, bk. 3, p. 40. Other authorities might be cited to the same point. An interpretation of this clause in our Organic Act has been made by the supreme court of the United States in the case of *Ferris* v. *Higley*, 20 Wall. 375. In referring to the lan-

guage " common-law jurisdiction," which occurs in the ninth section of the Organic Act of Utah (which section is the same as that of our Organic Act), the court says : " The common-law and chancery jurisdiction here conferred on the district and supreme courts is a jurisdiction very ample and very well understood. It includes almost every matter, whether of a civil or criminal cognizance, which can be litigated in a court of justice."

Chancery jurisdiction is well known. It does not embrace a cognizance of criminal cases. The right to hear and determine such cases must come under the grant of common-law jurisdiction. And it would seem that the proper construction of this language of that court would be that this grant of common-law jurisdiction included the right to hear and determine almost every criminal matter that " can be litigated in a court of justice."

It may also be observed that in the above case of *Ferris* v. *Higley,* the court derived what jurisdiction congress intended to confer upon the probate court of Utah, from the language of the Organic Act, and the history of the jurisprudence that generally prevails in the United States. It holds that the jurisdiction of the probate court of Utah must be confined to the probate of wills and matters of estates. The justice of the peace courts have a very limited jurisdiction. They were evidently intended as inferior courts. Where then are we to have a court with general and original jurisdiction of all cases at law, such as were the courts known as common-law courts in the several States, if it is not the district and supreme courts ? Such I am confident is the character of our district court and so intended by the power that created it. Hence it would have jurisdiction of the case at bar because it is a case at law.

The fact that under the amendment to our Organic Act approved March 2, 1867, the probate court would have jurisdiction of this case, does not militate against the above views. Under the second section of this amendment " the probate courts of the Territory of Montana, in their respective counties,      *      *      * are hereby authorized to hear and determine      *      *      * such criminal cases arising under the laws of the Territory as do not require the intervention of a grand jury." It is not uncommon to find two courts having concurrent jurisdiction over the same class

of cases. We find that the court of common pleas and the king's bench, as organized by the jurisprudence of England, had concurrent jurisdiction over many subjects. Blackstone, bk. 3, pp. 37–42. The courts of the United States and the State courts have concurrent jurisdiction over many causes of action. This amendment to our Organic Act confers jurisdiction in certain " criminal cases " upon the probate court, but does not prohibit the same to the district court. We have seen that the district court had jurisdiction of this cause before this amendment was adopted. The amendment repeals the original act only so far as it is "inconsistent " with the same. Two statutes, that confer jurisdiction over the same class of actions to different courts, are not incompatible because, as we have seen, courts may, and frequently do, have concurrent jurisdiction. Nor is this conclusion inconsistent with the jurisdiction conferred by statute upon the courts of justices of the peace. The case of *Ferris* v. *Higley*, as before stated, bases its conclusion upon the ground that, in determining the jurisdiction of the courts created by our Organic Act, we are not only to recur to said act and the statutes of the Territory, but to the general history of jurisprudence throughout the United States and the characteristics thereof. Considering these, we find that the justice of the peace courts, which exist in most if not all the States, usually have had and now have about the same jurisdiction as has been conferred upon said courts by our statutes.

In the *Matter of Martin Conner*, 39 Cal. 98, it was held that, within the purview of the act of congress, approved April 14, 1802, conferring upon certain State courts the right to naturalize aliens, a court having jurisdiction of *some* common-law cases was a court of common-law jurisdiction. It cannot, however, have been the intention of the framers of our Organic Act, that the giving of the district and supreme courts jurisdiction over some law or common-law actions, would be a compliance with the terms used. The probate court originally had jurisdiction only of matters pertaining to estates and wills. The justice of the peace courts have by the terms of the Organic Act a very limited jurisdiction, and should the legislative power of the Territory confer upon the district and supreme court jurisdiction only of a few law cases, rightfully and in accordance with the provisions of the Or-

ganic Act, then there would be a large number of cases that would fall within the jurisdiction of no court. The interpretation given to the phrase "common-law jurisdiction," as it occurs in said law, would not be a sufficient definition of the same words in our Organic Act. If there was any intention by the framers of our Organic Act to confer any jurisdiction by the terms used, of which there can be no doubt, there should be no narrow interpretation given them. It should be considered that something reasonable and beneficial was intended. If it was intended that the conferring of jurisdiction of one or two chancery cases and one or two law cases upon the district court would be a compliance with the proviso under consideration, then it might have been left out, for its practical effect would amount to nothing. If such an interpretation should be placed upon the limitation this proviso contains upon the legislative power of the Territory, it would be a very narrow one and hardly consistent with a reasonable intention. And then it would seem that, when it is said that a court shall have jurisdiction of law cases, the conferring upon it of jurisdiction of some law cases is not up to the full extent of the obvious meaning of the language used. The above decision in the *Matter of Martin Conner* defines common-law jurisdiction to mean the right " to try and decide causes which were cognizable by the courts of law under what is known as the common law of England." And yet it holds that the right to try some of these causes meets the definition. If the term "common-law jurisdiction" originated, as I apprehend, in defining the jurisdiction of one court, which had the jurisdiction of the several superior law courts of England, that is, the right to hear and determine all law actions, then there can be no limit in the law jurisdiction of a court whose authority to hear and determine cases is measured by such language. It should be borne in mind that the term "common-law jurisdiction" does not occur in describing the jurisdiction of any court in England, but that it is a phrase of American origin applied to American courts.

Therefore we find that the court below committed an error in sustaining the demurrer to the indictment.

*Judgment reversed.*

NOTE.—The section of the law which has been commented upon in this opinion was amended by an act, approved February 11, 1876, which provides that the district and pro-

bate courts shall have concurrent jurisdiction of certain misdemeanors, and that nothing in said law "shall deprive the district court of jurisdiction over such misdemeanor, as the grand jury may, of its own motion, take cognizance of." Sts. 9th Sess, 59.—REP.