[No. 514.   February 28, 1893.]

## WILLIAM H. BUCHER, TRUSTEE, APPELLEE, v. MOSES L. THOMPSON ET AL., APPELLANTS.

MECHANIC'S LIEN—POWER OF PROBATE CLERK TO VERIFY CLAIMS.—Held, on demurrer:   The clerks of the probate courts of this territory have authority, by implication, to administer the oath required in the verification of a claim for a mechanic's lien, as an incident to their office; and the demurrers to the answers of the lien claimants herein, on the ground that they had no such authority, should have been over-ruled.

APPEAL, from an order sustaining the demurrers to the answers filed by the mechanic's lien claimants, from the Third Judicial District Court, Sierra County. Reversed, SEEDS, J., dissenting.

The facts are stated in the opinion of the court.

H. L. PICKETT for appellants.

A probate clerk can administer an oath to a lien claimant who desires to verify his notice or claim of lien before such clerk.   Comp. Laws, N. M., p. 409, sec. 6, and pp. 235, 245, sec. 6; also, p. 140, sec. 23, Id. See, also, 2 N. M. 271; 11 Curtis (U. S.), 345, 346; Acts, N. M. 1889, p. 120, sec. 17.

A probate court in this territory is a court of record, and the probate clerk has a general authority for administering oaths. Fowler v. Merrill, 11 How. 656; Shroyer v. Richmond, 16 Ohio St. 455; 3 Ohio St. 500.

FIELDER BROS. & HEFLIN for appellees.

LEE, J.—This is a suit in chancery, instituted in the district court for Sierra county by William H. Bucher, trustee, to foreclose a deed of trust given by Moses L. Thompson and Annie B. Thompson, his wife, upon certain mines and mining property described in the bill of complaint. At the date of the institution of this suit, there were about thirty claims of lien on record against the property involved, being for work and labor performed upon the property, and materials furnished. Complainant made all these lien claimants parties to his bill of foreclosure of his deed of trust, alleging that their claims of lien were subsequent to the lien created by the deed of trust. These lien claimants, by their respective solicitors, answered the bill of complaint, setting up their respective claims of lien, and alleging priority over the deed of trust. Complainant demurred to the answer of each lien claimant, setting up several causes of demurrer to each claim of lien. One of the grounds of demurrer set up was that the claims of lien were verified before the probate clerk, J. M. Webster; the point relied upon being that the probate clerk had no authority to administer an oath in such case. Upon the first point mentioned, namely, that the probate clerk had no authority to administer the oath required in the verification of the claim of lien, the court below sustained the demurrer. From this decision the defendants below bring the case to this court.

The case presents but one question for the consideration of this court, which is, has a clerk of a probate court in this territory power to administer oaths to per-

sons in verification of an account to be filed with the notice to obtain mechanics' liens, in pursuance of the statute for that purpose? In the various acts of the legislature in regard to these officers, it appears to be assumed that they are possessed with power to administer oaths, but we do not find anywhere any such power expressly conferred upon them. The authority of public officers, in any given case, consists of those powers which are expressly conferred upon them, or which are expressly annexed to the office by the law creating it, or some other law referring to it, or which are attached to the office by the common law, as incident to it. Mechem, Pub. Off., sec. 507. As the legislature has not, by any act, expressly conferred this power, if it exists at all it must be by implication from the various acts referring to them, or it must be from the common law, as incident to the office. As the legislature, by direct act, has provided compensation to such officers for administering oaths, it clearly implies a power or authority in them to administer such oaths, on the principle that that which is implied in a statute is as much a part of it as what is expressed. U. S. v. Rabbit, 1 Black, 61.

*Mechanic's lien: power of probate clerk to verify.*

It is contended that this implication may authorize them to administer oaths directly connected with probate business, but not in other matters. It may, therefore, be necessary to consider the question as to whether the power exists in them as incident to their office. This could only be upon the theory that the legislature, in their various acts in regard to these courts, have constituted the probate courts courts of record, as under the common law the power to administer oaths generally was only incident to clerks of courts of record. In order to determine what the intention of the legislature was in this respect, it is necessary to consider the character of the legislation in regard to probate courts, and what constitute courts of record. The definition

of a "court of record," as given by the earliest commentators on the common law, is as follows: "A court of record is a court where the acts and judicial proceedings are enrolled on parchment or paper for a perpetual memorial and testimony, and which has power to fine and imprison for contempt of its authority. 3 Bl. Comm. 24; 3 Steph. Comm. 269; Co. Litt. 117. Blackstone says: "All courts of record are the king's courts, in the right of his crown and royal dignity, and, therefore, no other court hath authority to fine and imprison; so that the very creation of a new jurisdiction, with the power of fine or imprisonment, makes it instantly a court of record." The definition given by Black is: "A court which has jurisdiction to fine and imprison, or one having jurisdiction of civil cases above forty shillings, and proceeding according to the common law." Some of the later decisions have held that courts of record are those that proceed according to the rules of the common law. This definition can not, however, be universally applied. Formerly the district courts of this territory were governed by the mode of practice and rules of the civil law, and yet it could hardly be said that they were not courts of record. The same condition of affairs existed in some of the states, but we do not find any case holding that their courts were not courts of record on that account, and the definitions above given show that it was not so considered originally in all cases. Our probate courts are created by the organic act of the territory, and are to exercise the jurisdiction conferred upon them, as limited by law. The legislature of the territory, in pursuance thereof, has provided by various acts that they shall exercise jurisdiction in all probate matters; also matters pertaining to guardians and wards; master, and those bound to him; insane persons, habitual drunkards, with power to appoint guardians over their estates, and, in certain cases, power to sell real estate;

jurisdiction over vagrants, with power to try them by jury, as well as over contested wills. That they shall have appellate jurisdiction from justices of the peace. That all of their orders, judgments, and decrees shall be entered of record. That they shall have a seal, and that all transcripts of such records, certified to by the clerk under the seal of the court, shall have the same presumption as to jurisdictional facts as are entertained toward those of general jurisdiction. That their records shall be a verity, and can only be reviewed by appeal to the district court. That they shall have the same power to fine and imprison for contempt as that which is exercised by the district courts.

By an act approved February 2, 1860, the jurisdiction of the probate courts was extended to civil suits upon open or liquidated account, replevin, debts of all nature, when the sum claimed does not exceed $500, and concurrent jurisdiction with justices of the peace in criminal cases, and providing that the practice in the probate courts shall be the same as that in the district courts, in all its parts and provisions. We are aware that it has been thought that this act is void, as coming under the construction given to a Utah statute in Ferris v. Higley, 20 Wall. 375; but the statutes are so dissimilar that the questions decided in that case are not involved in this. In the Utah statute it was provided that the probate courts in their respective counties should have power to exercise general original jurisdiction, both civil and criminal, and as well in chancery as in common law. The supreme court held that congress, having established the supreme and district courts with general jurisdiction in chancery as well as in common law, repelled the idea that it left it to the power of the legislature to practically evade or obstruct the exercise of those powers by conferring precisely the same jurisdiction on courts created and appointed by the territory, and, therefore, held that the

act of the territorial legislature conferring general jurisdiction, in chancery and at law, on the probate courts was void.

Justice MILLER, in the opinion, says: "Nor are we called upon to deny that the functions and powers of the probate court may be more specifically defined by the territorial statute within the limit of the general idea of the nature of probate courts, or that certain duties not strictly of that character may not be imposed upon them by that legislation."

The act of this territory does not contain any of the objectionable features upon which the supreme court held the Utah statute void, and we are inclined to believe there are none, even under the organic act, in law, or in reason. While it might be open to judicial construction, as to jurisdictional questions, there is no reason upon which any court could hold it void. By it the practice in the probate courts, in all its parts and provisions, is to be the same as that of the district courts, which is equivalent to enacting that in its mode of proceeding it is to be governed by the rules of the common law. It would, therefore, appear that the legislature of the territory, by its various acts in regard to the probate courts, has conferred upon them every requirement to constitute such courts courts of record; and that such was the intention of the various legislatures that have existed since the organization of the territory is clear, from the fact that probate clerks during all of this time have exercised the power of administering oaths, which power has been clearly recognized by the legislature. They must have legislated with the understanding that the power existed in them as incident to their office, and the thing within the intention of the makers of a statute is as much within the statute as if it were within the letter. Stowel v. Zouch, 3 How. 565.

We think, therefore, that the power to administer the oaths existed in the probate clerks, as incident to

their offices, and the demurrer to the answers should not, on that account, have been sustained.    The cause is, therefore, reversed, and remanded to the court below, with instructions to overrule the demurrers to the answers.

O'BRIEN, C. J., concurs.

FREEMAN, J.—I concur fully in the foregoing views announced by Judge LEE, but I am not content to rest my approval of the conclusions reached by the court solely on these grounds.    Independently of the question as to whether the probate court is a court of record, I think the oath taken by the lien claimant before the clerk of the court in which, by the statute, it was necessary to file the lien, was a full and complete satisfaction of the statute, which requires simply that the claim shall be sworn to, without designating the officer authorized to administer the oath.

SEEDS, J., dissents.